**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Enable Healthcare, Inc.,** | ) | **CASE NO. 1:16 CV 2395** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Cleveland Quality Healthnet, LLC,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### INTRODUCTION

This matter is before the Court upon Plaintiff's Motion for Attachment of Property (Doc.

22). This lawsuit arises from a Consulting Agreement entered into by the parties on February 20,

2014. Plaintiff Enable Healthcare, Inc., asserts that it has fulfilled its obligations under the

agreement and is entitled to payment from defendant Cleveland Quality Healthnet, LLC, for its

services. For the following reasons, plaintiff's Motion for Attachment is DENIED.[1]

### FACTS

A group of physicians from the Cleveland area formed defendant for the purpose of

---

[1]     This Court denied plaintiff's motion for preliminary injunction on November 7,
2016. Familiarity with that Order is assumed.

aggregating Medicare patients to qualify as an Accountable Care Organization ("ACO"). The goal of an ACO is to qualify for a Shared Savings incentive payment by fulfilling the terms of a Participation Agreement with the Centers for Medicare and Medicaid Services ("CMS"). Defendant retained plaintiff as a consultant to assist in this endeavor. According to defendant, plaintiff represented that, as part of the agreement, it would do such things as accumulate and aggregate claims data, prepare files for plaintiff's data analytics platform, provide a functioning software platform that would provide real-time coordination with other medical providers to enable physicians to effectively manage patient care and achieve efficiencies, and provide funding strategies. (Natesan Aff. ¶ 10). Plaintiff was also to recruit area vendors, suppliers, and ancillary service providers into business relationships with defendant to create an "Operating Resources" fund to allow defendant to provide employees, resources, and financial reserves to meet its obligations under the participation agreement with CMS. (*Id.* ¶ 11).

Defendant maintains that plaintiff failed to meet its obligations under the agreement because it did not provide the services that it had promised. Specifically, defendant states that plaintiff did not accumulate and aggregate the claims data, did not prepare files for the data analytics platform, did not secure Operating Resources, and never provided a usable technology platform. (*Id.* ¶¶ 13-17). At the end of the first performance year (2014) under its participation agreement with CMS, defendant states that plaintiff's software was not functional. As a result, defendant's participating practice groups had to use their own personnel to manually enter the data. Defendant also hired a third-party to complete data submission. (*Id.* ¶¶ 21-22). Defendant failed to meet the baseline shared savings required by CMS and did not earn an incentive payment for 2014.

2

Defendant states that in 2015, it received little to no support from plaintiff with respect to the compilation of patient data. According to defendant, plaintiff refused to fulfill its obligations to defendant because of an unrelated billing dispute with one of the practice groups participating in the ACO. (*Id.* ¶¶ 26-29). Because defendant faced financial penalties if it failed to comply with CMS deadlines, it used its own staff to compile the data and again hired a third party to assist in the uploading of the data to CMS. (¶ 30). Defendant has filed a counterclaim for breach of contract against plaintiff.

Plaintiff states that it fully complied with the terms of the Consulting Agreement, resulting in defendant earning a shared savings incentive payment for performance year 2015. (*See generally* Subbiah Aff.). Plaintiff filed the instant lawsuit, bringing claims for anticipatory repudiation/breach of contract and unjust enrichment, and alleging that it is owed a total of $1,110,567.68 under the Consulting Agreement. It now seeks to attach the Shared Savings payment that defendant will receive from CMS. Defendant opposes plaintiff's motion.

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 64(a) states: "At the commencement of ... an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of a potential judgment." In an attachment proceeding, federal courts in Ohio apply Chapter 2715 of the Ohio Revised Code. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Whiteford Sys., Inc.*, 787 F. Supp. 766, 768 (S. D. Ohio 1992). Under Ohio law, "[a] plaintiff in an action for the recovery of money, upon or at any time after the commencement of the action, may apply to the court by written motion for the attachment of property, other than personal earnings, of the defendant." Ohio Rev. Code § 2715.03. The

3

motion must include an affidavit setting forth the nature and amount of the claim; the facts that support at least one ground for an attachment contained in § 2715.01; a description of the property sought and its approximate value; the location of the property; and to the best of plaintiff's knowledge, the use to which the defendant has put the property. *Id.* "Only upon determining that Plaintiff has satisfied these requirements may the Court consider the actual motion for attachment." *Hook v. Baker*, 2004 WL 3113716, at *3 (S.D. Ohio Sept. 7, 2004).

To succeed on a motion for attachment, a plaintiff must prove the existence of probable cause, which "means that it is likely that a plaintiff who files a motion for attachment pursuant to section 2715.03 of the Revised Code will obtain judgment against the defendant against whom the motion was filed that entitles the plaintiff to a money judgment that can be satisfied out of the property that is the subject of the motion." Ohio Rev. Code Ann. § 2715.011(A).

Here, the property that plaintiff seeks to attach is "the check for the CMS MSSP Earned Shared Savings Payments in the amount of $2,935,564 or its proceeds." (Subbiah Aff. ¶ 13). Plaintiff states that it is entitled to $1,110,567.68 of the Shared Savings Payments. (*Id.*) Defendant argues that plaintiff is not entitled to attachment of this check because it has not offered a bond in twice the amount of the value of the property sought, as required by Ohio Rev. Code § 2715.044; has not set forth facts showing that any of the grounds for attachment are applicable; and has not shown probable cause.

Defendant's argument that plaintiff must have already offered a bond before it may obtain an order of attachment is not well-taken. Section 2715.044 states that "[a]n order of attachment issued by a court shall not be effective until the plaintiff that filed the motion for attachment files with the court a bond to the defendant against whom the motion was filed."

4

Thus, while an order of attachment would not be effective until after the plaintiff files a bond, § 2715.044 does not require that this bond be executed at the time an order is sought.

Defendant's next argument–that plaintiff has failed to show that any of the grounds for attachment apply–has more merit. Plaintiff claims that attachment is appropriate for three reasons. First, it claims that "[d]efendant is about to convert property, in whole or in part, into money, for the purpose of placing it beyond the reach of creditors." Ohio Rev. Code § 2715.01(A)(7). Plaintiff cites to the affidavit of Anthony Subbiah for this assertion. He avers that "[o]n information and belief, when Defendant receives the CMS MSSP Earned Shared Savings Payments, it will convert that property into money payments to each of its member physician practices, thereby placing it beyond the reach of Plaintiffs." (Subbiah Aff. ¶ 10). In his affidavit, Mr. Subbiah does not identify how he is connected to this case or how his testimony is based on personal knowledge. Even if he had, he provides no facts that would support his conclusory statement. Indeed, he does not even aver that defendant would convert the Shared Savings Payment into money *for the purpose of* placing it beyond the reach of plaintiff. Plaintiff cites no evidence that defendant has taken any action in an effort to avoid satisfying a judgment. As defendant points out, its physicians live and practice in the greater Cleveland area, and there is no evidence that they would be beyond the reach of plaintiff.

Second, plaintiff alleges that attachment is appropriate because "the defendant is about to dispose of property, in whole or in part, with the intent to defraud creditors." *See* Ohio Rev. Code § 2715.01(A)(9). Plaintiff must show "an actual intent to defraud" to obtain attachment on this ground. *See Yen Enter. v. Hsu*, 1985 WL 8542 (Ohio Ct. App. 8th Dist. Oct. 31, 1985). Plaintiff has not met this burden. Even if Subbiah's affidavit were based on personal knowledge,

5

it contains no facts to support his conclusory statement that defendant's payments to its physicians would be done with the intent to defraud plaintiff. *See Mayfield v. Crawford*, 2008 WL 5705573 (N. D. Ohio April 28, 2008) (denying motion for attachment under § 2715.01(A)(9) because "there [was] absolutely no evidence before the Court that [party's action] was done with intent to defraud creditors").

Finally, plaintiff alleges that attachment is appropriate because its claim is for "work or labor." *See* Ohio Rev. Code § 2715.01(A)(10). It appears, however, that Ohio courts have held that the type of work contemplated by § 2715.01(A)(10) is "bodily labor or that in which such labor is the principal ingredient." *See Corbett v. Moderalli*, 1978 WL 214903 (Ohio Ct. App. 7th Dist. March 23, 1978). "Ohio courts on numerous occasions have consistently held that the word 'work' as used in R.C. 2715.01(K)[2] is not as broad as its commonly understood meaning. Thus, it is now firmly established that the word 'work' as used in that provision does not include the rendering of services by a professional such as an attorney or a physician, whose services are primarily mental and involve the exercise of professional judgment." *Papouras v. The M.J. Kelley Co.*, 1976 WL 191093 (Ohio Ct. App. 8th Dist. Oct. 14, 1976). Under the Consulting Agreement, the kind of work that plaintiff was to perform appears to have been primarily mental rather than physical and involved the exercise of professional judgment. Thus, the Court is not convinced that § 2715.01(A)(10) is an appropriate ground for attachment in this case.

But even if plaintiff had met the prerequisites set forth in Ohio Rev. Code § 2715.03, the Court finds that it is still not entitled to attachment because it has not shown probable cause. Defendant has provided an affidavit of a member of its executive committee identifying

---

[2]    Section 2715.01(K) is the predecessor to § 2715.01(A)(10).

6

numerous obligations that plaintiff failed to meet under the Consulting Agreement. Plaintiff

disputes this evidence and provides its own affidavit stating that it did meet its obligations.

Given this conflicting evidence on the material elements of the claims and counterclaims in this

case, the Court cannot conclude that plaintiff is "likely" to obtain judgment against defendant, as

required by Ohio Rev. Code § 2715.011(A).

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Attachment of Property (Doc. 22) is

denied.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan                    
PATRICIA A. GAUGHAN
United States District Judge


Dated:   11/18/16